# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARIEN HOUSER, ) | |
| ) | |
| Plaintiff, ) | Civil Action 13-cv-1068 |
| ) | United States District Judge |
| v. ) | Maurice B. Cohill, Jr. |
| ) | United States Magistrate Judge |
| PENNSYLVANIA DEPARTMENT OF ) | Cynthia Reed Eddy |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendants. ) | |

**Memorandum Order Re: Plaintiff's Motion For Discovery,
Motion For Reduction Of Copies (ECF No. 84);
Plaintiff's Motion for Pre-Discovery (ECF No. 94);**

**Introduction**.

On May 19, 2014, Plaintiff Darien Houser, an inmate incarcerated at the State Correctional Institution at Greene (SCI-Greene) in Waynesburg, Pennsylvania, filed his Second Amended Complaint (ECF No. 69), with leave of court, against the Pennsylvania Department of Corrections, DOC's Secretary, John Wetzel, numerous DOC correctional officers and other employees, including John and Jane Does, and various medical staff with DOC and Wexford Medical Inc., the third party health care provider at SCI-Greene.[1] Plaintiff's Second Amended Complaint raises federal and state claims arising from numerous allegedly unconstitutional and intolerable conditions of confinement and denial of necessary medical treatment in 2011-2013, including: continuing confinement in a non-handicapped cell (Plaintiff uses a wheelchair) on G-block in the RHU complex, which featured metal stripping across the threshold of the cell door which hindered his access and caused him injuries when exiting and entering his cell, including

1

tearing of his left bicep; inadequate treatment of his left bicep injury; over Plaintiff's objection and explanation of the danger, use of security restraints and a "black box" used to secure locks for handcuffs and leg chains while transporting Plaintiff on November 16, 2011 for outside medical evaluation and treatment, which restraints triggered Plaintiff's angioedema (as diagnosed by an outside doctor, Dr. Gorby, in September, 2011), causing rapid and painful swelling of face, tongue, lips, groin, and extremities and presenting the danger of swelling of his throat and eyes, *inter alia*, potentially life threatening conditions of which DOC officials and medical staff were aware; denial of treatment or evaluation for broken fingers caused when DOC corrections officers "smashed" his fingers in a gate on July 31, 2011; retaliation by prison officials for being a frequent grievance filer, including confinement in solitary and inadequate food, clothing and blankets during winter months; denial of adequate medical treatment of his angioedema on September 11-12, 2011, and again on January 1, 2012, which caused Plaintiff unnecessary pain and suffering when medical staff and corrections officers refused to act on Plaintiff's complaints that he was experiencing flare-ups even though his swelling was apparent; exposure to second hand smoke and denial of necessary hygiene materials.

Although this Court had not issued any discovery orders, Plaintiff filed a Motion for Discovery, Motion for Reduction of Copies (ECF No. 84), and the DOC Defendants and the Medical Defendants filed Notices and Objections to many of the requests for discovery. (ECF Nos. 86-89). Plaintiff also filed a reply (ECF No. 90) to the Defendants' Notices and Objections, agreeing that Defendants had provided some of the discovery requested.[2] The Court notes that

---

[1] Plaintiff's Second Amended Complaint names over 35 Defendants.
[2] Document No. 90 was docketed as Plaintiff's Motion to Compel Discovery. The Court deemed the "motion" to be in the nature of a Reply to Defendants' responses. See Text-only Order of January 5,

the DOC Defendants produced a fair amount of grievances as exhibits in the Appendix to their eventually mooted motion for judgment on the pleadings, and a great deal of grievance related and other documents in the earlier Houser case at Civil Action No. 10-416 as exhibits to the Appendix on summary judgment.[3]

On December 31, 2014, Plaintiff filed a Motion for Pre-Discovery (ECF No. 94) related to his pending motion for preliminary injunction (ECF No. 91).[4]

**Discovery Standards Generally**

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). The polestar of discovery is relevance. Relevance for discovery purposes is defined broadly.

The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Discovery may properly be limited where:

---

2015.
[3] The Court does not deem it unreasonable to require Defendants to produce copies of relevant materials this Court deems discoverable and producible just because the materials were previously filed or provided in *Houser I*, Civil Action No. 10-0416. Mr. Houser submitted his original exhibits to the Court as part of his summary judgment appendix in *Houser I*, and he no longer has access to those.
[4] This Court recommended that the district court deny the motion for preliminary injunction on February 20, 2015. Report and Recommendation (ECF No. 104).

>     (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).

However, when there is no doubt about relevance, a court should tend toward permitting discovery. *Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 265–66 (E.D.Pa. 1992). In prisoner *pro se* cases, a court should consider a prisoner-litigant's inability to gather facts relevant to the proof of his claim and should be sensitive to his discovery difficulties. M*ontgomery v. Pinchak*, 294 F.3d 492, 501 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993)).

Fed.R.Civ.P. 34 requires that a party served with a document request either produce the requested documents or state a specific objection for each item or category objected to. The burden is upon the party objecting to discovery to state the grounds for the objection with specificity. Fed.R.Civ.P. 33(b)(4); *Momah v. Albert Einstein Med. Cntr.*, 164 F.R.D. 412, 417 (E.D.Pa. 1996). "Mere recitation of the familiar litany that an interrogatory or a document production request is overly broad, burdensome, oppressive and irrelevant will not suffice." *Id.* (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). The objecting party must demonstrate in specific terms why a particular discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F.Supp. 255, 258 (E.D.Pa. 1982). The party attempting to withhold the release of relevant material on the

grounds of privilege must also "describe the nature of the documents, communications, or other tangible things not produced or disclosed in a manner that will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A)(ii). Once an objection has been properly articulated, the burden rests with the party seeking discovery to show that a discovery request lies within the bounds of Rule 26. *Momah*, 164 F.R.D. at 417. Then, the party opposing discovery must convince the court why discovery should not be had. *Id*. (citing *Amcast Indus. Corp. v. Detrex Corp*., 138 F.R.D. 115, 118-19 (N.D.Ind. 1991)).

**Plaintiff's Motion For Discovery, Motion For Reduction Of Copies (ECF No. 84)**

With those standards in mind, the Court will make the following rulings on Plaintiff's requests (ECF No. 84) and Defendants' objections to discovery.

1(a). All grievances from January 2011 to present. The Court agrees with Defendants that this request is overly broad and burdensome, especially in light of Defendants' disclosure of a grievance history, and 22 grievances which Defendants consider relevant to Plaintiff's claims in this case. To the extent Plaintiff believes he is entitled to have copies of additional grievances relevant to the claims raised in his Second Amended Complaint, he must specifically identify the nature and approximate dates of the grievances sought, and Defendants will be directed to provide any additional grievances so identified, even if they are in the Appendix to the Motion For Judgment On The Pleadings (ECF No. 45), or previously provided in *Houser I*, Civil Action No. 10-0416. *See* note 4, *supra*.

1(b). Information regarding handicapped cell and history of placement "since 2006." Defendants do not challenge the relevancy of this information, but object that they do not "maintain this information in a manner that is easily retrievable." The Court will direct

5

Defendants to retrieve the handicapped cell history information as limited by Plaintiff in his Reply to Defendants' response (ECF No. 90), but only from 2011 through 2013.

1(c). Plaintiff's own cell history. Defendants assert that this information was previously provided to Plaintiff but if the disclosure was part of *Houser I,* Civil Action No. 10-0416, Defendants will be directed to provide him with another copy.

1(d) Identity of John Doe officers and medical staff nurses involved in the "broken fingers" incident in SCI-Graterford on 7/31/11. Defendants claim there is no record of "alleged finger slamming or medical care" for his fingers. Nevertheless, Defendants may be able to identify the officers and medical staff nurses on duty on the date and at the place of the alleged incident, and, if so, will be directed to provide Plaintiff with that information.

1(e). Medical logs and Plaintiff's infirmary cell history. Defendants indicate, and Plaintiff agrees, these logs have been provided.

1(f). Grievances filed against Dr. Bungyak Jin, M.D. Consistent with the Court's ruling in *Houser I*, the Court will deny this request as a fishing expedition. *See Bracey v. Price*, 2012 WL 849865, *3 (W.D.Pa. March 13, 2012) ("Plaintiff contends that the records of Defendants' past disciplinary proceedings may result in evidence regarding Defendants' honesty or may lead to other evidence that the Defendants are predisposed against prisoners. . . . Neither of these two broad assertions meets the burden initially placed on the Plaintiff to prove the relevance of the request for information.").

1(g). DC-15, inmate file, documents and 17X files from January 2011 to date. The Court shares the DOC concerns that Plaintiff's open ended request for the DC-15 documents may present undue security issues and agrees with Defendants that they may provide DC-15 and 17X

materials *relevant to Houser's claims*, but redacted if necessary (e.g., victim information). *See Bracey*, 2012 WL 849865 at *4. These files might have bearing on the claims in Houser's Second Amended Complaint. Therefore, the *relevant* portions of the DC-15 and 17X documents, both redacted and unredacted versions, should be provided to the Court for *in camera* review, even if some of these materials were previously provided in the related, *Houser I* case, but from January 2011 through 2013 only.

1(h). Photos of handicap cells on G-block and L-block. Defendants assert they have no such photos and so cannot produce something they do not have. *See Bracey v. Harlow*, 2012 WL 4857790, at *4 (W.D. Pa. Oct. 12, 2012) (Court cannot compel the production of things that do not exist; nor can the Court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation."). The Court agrees and will sustain Defendants' objections.

1(i) DOC Internal Procedures 6.5.1 and 6.5.8. Plaintiff sought this information in his related case at 10-416, and the Court upheld defendants' objections. *See* DOC Objections (ECF No. 159, p. 4 at Civil Action No. 10-0416) and Court Order granting in part and denying in part Motion for Leave to File Discovery (ECF No. 161 at Civil Action No. 10-0416). Defendants reassert those objections here as they are the confidential internal working procedures for staff dealing with Security Level 5 RHU inmates and Capital case inmates, and directly implicate security concerns and cannot be shared with inmates. The Court will deny Plaintiff's request. Allowing Plaintiff access to such information would create a substantial security risk. *See Paluch v. Dawson*, 2007 WL 4375937, at *5 (W.D.Pa. Dec.12, 2007).

1(j-l). Names of John or Jane Doe nurses on 7/31/12, 9/11/11, and 9/12/11. The Medical Defendants shall provide Plaintiff with this information.

1(m). Identity of "Wexford management final decision maker." The Court will direct the Medical Defendants to supply this information.

1(n). Medical Defendants' credentials. Consistent with the Court's ruling in *Houser I*, (ECF No. 184 at Civil Action No. 10-0416), the Court will sustain Defendants' objections except to the extent they have made available Dr. Jin's CV for Plaintiff to copy.

"Reduction of Copies"

Finally, Plaintiff, who proceeds in forma pauperis, requests this Court to relieve him of the burden of providing copies of documents to defense counsel, which has created a financial hardship with his prisoner account, but it is unclear what relief he seeks. Plaintiff appears to be objecting to his "medical disability unemployment" status within SCI-Greene, which prevents him from receiving GLP pay, and creates a hardship in paying for photocopies. This Court will deny the request. *See Ingram v. SCI-Camp Hill*, 448 F.App'x 275, 280 (3d Cir. 2011) (district court did not abuse its discretion in denying prisoner's motion to compel SCI-Greene to allow him to copy his medical records in the prison law library so that he would not have to pay the prison to make copies for him at a greater cost; court declined to direct a procedure that was contrary to the prison's existing policies for obtaining copies) (citing *Tabron,* 6 F.3d at 158–59) (indigent litigant must bear his own litigation expenses). Without more, the Court will deny Plaintiff's request for reduction of copies. However, as in *Houser I*, the Court will permit copies of documents Plaintiff files with the Court to serve as copies distributed to any defendants who

have been served and for whom counsel has entered an appearance, because such Defendants will have access to this Court's ECF.

**Plaintiff's Motion for Pre-Discovery (ECF No. 94)**

The Court has recommended denial of Plaintiff's Motion for Preliminary Injunction (ECF No. 91). See Report and Recommendation (ECF No. 104). Nevertheless, inasmuch as some of Plaintiff's requests bear upon his underlying claims and his previous, overlapping pending discovery motion, and because the DOC Defendants have supplied much of the pre-discovery requested, the Court will consider the motion for pre-discovery and the response thereto. After careful consideration of Plaintiff's pre-discovery requests related to his motion for preliminary injunction, and Defendants' responses thereto, the Court issues the following rulings.

(a) Documents showing Plaintiff began having swelling problems in June of 2010, "including blood test for angioedema" and blood tests for angioedema from 2008 to date. Defendants have supplied the requested information.

(b) Lab work requested by Dr. Gorby on 11/16/11. Defendants have supplied the requested information.

(c) Progress notes and physician's orders from 8/31/12, and documents showing plaintiff informed Dr. Jin that he had tennis elbow. Defendants have supplied the requested information.

(d) Progress notes and records for 9/12/12 and 10/11/12. Defendants have supplied the requested information.

(e, f) Plaintiff is seeking certain documents relating to medical care on 12/21/12. Defendants have supplied the requested information in part. The Court agrees with Defendants

however, that Plaintiff's requests reflect a misunderstanding of what defendant RNS Nedra Grego stated in her declaration (ECF No. 92-1) about the progress notes and Dr. Jin's visit with Plaintiff on that day and his discussion of "blood tests." Dr. Jin was not referencing recent blood tests, and none were taken for the angioedema or his shoulders, arms and wrists, as Plaintiff seems to believe.

(g) Plaintiff is asking for his 2012 through 2014 medical records. DOC Defendants have supplied the requested information that was in their possession. If Medical Defendants have additional records, they should supply same to Plaintiff.

(h) "Documents, reports, housing area logs" and officer logs relating to medical treatment on specific dates in October and November of 2014. These dates are far beyond the dates of the underlying claims, and the Court agrees with Defendants that this information is of marginal relevance to the underlying claims and denies this request. *See Bracey*.

(i) The Dr. Balk "report" of 8/6/10 regarding angioedema. Defendants have supplied the requested information.

(j) Document showing Plaintiff asked to be excused from using the black box and wanted to be transferred to SCI-Graterford. Defendants have supplied the requested information.

(k) Copy of Dr. Gorby's lab results. Defendants have supplied the requested information.

(l) Reports, records indicating Plaintiff was seen and received treatment for a bicep injury. Defendants have supplied the requested information.

(m-o) Similar requests to (b, c, f and g) regarding progress notes and records of tennis elbow, angioedema and treatment with Benadryl. Defendants have supplied the requested information.

(p) The "policy" that requires inmates to be transported using the "black box." The policy that requires these restraints is the confidential 6.3.1 security procedures for Level 5 Housing. Defendants strongly object to providing copies to plaintiff, as disclosing the ins and outs of prisoner transport procedures poses a safety risk and could be dangerous to staff and to the public. The Court agrees with Defendants that allowing Plaintiff access to such information would create a substantial security risk and will deny the request. *See Paluch*, 2007 WL 4375937, at *5; *Eggleston v. Mitchell*, 2013 WL 5351053, *1 and n.2 (M.D.Pa. 2013).

(q) Plaintiff seeks "contact information and names" of final decision makers of the various successive health care companies which have contracted to provide services at SCI-Greene as to his medical treatment, hospital treatment and health care items. DOC Defendants assert that they are not able to provide this information, and could only refer Plaintiff to defendant Jin. The Court will direct the Medical Defendants, however, to supply this information to the extent they have knowledge of who the final decision makers in the line of succession of health care companies under contract at SCI-Greene have been.

The Defendants shall provide all court ordered discovery or provide court with chambers copies where directed to do so, on or before March 16, 2015.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record

DARIEN HOUSER
GL-7509
SCI Greene
175 Progress Drive
Waynesburg, PA 15370